UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JANICE ANNA MAY BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:13-CV-11 |
| | ) | (GREER/SHIRLEY) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of the Plaintiff's Motion for Judgment on the

Pleadings and Memorandum in Support [Docs. 11, 12] and the Defendant's Motion for Summary

Judgment and Memorandum in Support [Docs. 17, 18]. Plaintiff Janice Anna May Banks seeks

judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of

the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the

Commissioner").

The Plaintiff filed her application for a period of disability and disability insurance

benefits under the Act on September 4, 2009, alleging disability since August 7, 2000[1], due to

---

[1] The Plaintiff originally filed an application for disability on August 7, 2000, and was granted disability insurance
benefits and supplemental security income on September 19, 2000. [Tr. 10]. The Plaintiff's benefits were ceased in
October 2007, and terminated effective December 31, 2007, following a continuing disability review. [Id.].
Because the Plaintiff had received disability benefits from September 2000 through December 2007, the ALJ found
the relevant period at issue in this case began April 1, 2009, the date the Plaintiff first became insured for Title II

1

headaches, Hepatitis C, Methicillin Resistant Staphylococcus Aureus ("MRSA"), dyslexia, depression, nervousness, and pain in her left arm and elbow, femur, and back. Her application was denied initially and upon reconsideration. The Plaintiff then requested a hearing, which was held before ALJ John McFadyen, in Morristown, Tennessee, on March 18, 2011. The Plaintiff was present and testified. The ALJ issued an unfavorable decision on September 23, 2011, finding the claimant capable of performing a full range of light work. The Appeals Council denied Plaintiff's request for review of that decision; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.   ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant first meets the insured status requirements of the Social Security Act from April 1, 2009, through the date last insured of December 31, 2010.

2.  The claimant has not engaged in substantial gainful activity since April 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: degenerative disc disease of the cervical spine and status post left elbow fracture with residual pain (20 CFR 404.1520(c) 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526, 416.920(d), and 416.925 and 416.926)).

---

purposes, and August 20, 2009, the date the Plaintiff's Title XVI application was filed.  [Id.].

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

6.  The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on May 11, 1973 and was 27 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR Part 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 12-21].


## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, the plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of

3

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must

4

prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless. See Wilson, 378 F.3d at 546-47

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    Medical Evidence[2]

The relevant evidence in the record can be summarized as follows:

### A.    Thomas W. Conway, M.D.

Thomas W. Conway, M.D., has been the Plaintiff's treating physician since at least 1996. [Tr. 311]. Based upon Dr. Conway's treatment notes, the Plaintiff began receiving treatment for anxiety in June 1997. [Tr. 308]. In August of the same year, she was placed on Diazepam in response to stress and tension due to various family issues. [Id.]. In July 1999, the Plaintiff continued taking Diazepam for anxiety and was advised to consider Cherokee Mental Health for counseling if needed. [Tr. 322]. From 2000 on, Dr. Conway's treatment notes indicate that the Plaintiff continued to experience anxiety. [Tr. 250, 256, 276, 295, 329]. However, various treatment notes from 2004 through 2010 report that Diazepam seemed to stabilize the Plaintiff's anxiety. [Tr. 253, 285, 286, 289, 445].

In September 2009, Dr. Conway noted that the Plaintiff seemed to have symptoms of depression, including crying spells. [Tr. 249]. The Plaintiff was prescribed Celexa and was again encouraged to consider going to Cherokee Mental Health. [Id.]. The Plaintiff reported that she was going to call Cherokee Mental Health [Id.], but the record is void of any evidence suggesting that the Plaintiff called or received mental health counseling from the facility.

Dr. Conway conducted a mental status examination of the Plaintiff in November 2009. [Tr. 397]. Dr. Conway opined that the Plaintiff's mood was anxious, but that her memory, concentration, and interactions with others was adequate and her thinking, affect, and

---

[2] The Plaintiff alleges error in the ALJ's treatment of her non-exertional limitations. [Doc. 12 at 8-12]. Therefore, the Court will only address the medical evidence of record relating to the Plaintiff's mental impairments.

6

psychomotor disturbance was normal. [Tr. 397]. In addition, Dr. Conway opined that mental retardation was not present. [Id.].

In March 2010, a nurse practitioner in Dr. Conway's office diagnosed the Plaintiff with bipolar disorder. [Tr. 443]. The Plaintiff was prescribed Lithium and advised to return to the clinic in three to four weeks for a follow-up. [Id.].

### B.     Roy Nevils, Ph.D.

In November 2009, the Plaintiff was examined by state agency psychologist Roy Nevils, Ph.D. [Tr. 401-05]. The Plaintiff reported that she had previously been on disability for nervousness and depression and recalled feeling nervous and depressed for "a long time." [Tr. 401]. The Plaintiff reported that there were "a lot" of problems in her family of origin and that she was raised by her grandmother. [Tr. 402]. The Plaintiff also explained that she took special education classes while in high school before dropping out in the 10th grade and denied any criminal history. [Id.].

The Plaintiff described her daily living activities which included caring for her two young sons, doing laundry, and preparing simple meals. [Tr. 403]. She stated that she is her own payee on her check but that she cannot count money or make change "real good" and receives help from her aunt. [Id.]. Due to her anxiety, the Plaintiff usually has a family member drive her around despite having a driver's license and car. [Id.]. In addition, the Plaintiff goes shopping once a month but always with her aunt. [Id.].

Dr. Nevils described the Plaintiff's mental status as "a very anxious individual" who has "a very emotional and histrionic personality style." [Tr. 403]. Dr. Nevils reported that the Plaintiff had a strong tendency to over talk the situation and had to be interrupted and redirected,

7

which represented an anxiety response.  [Id.].  The Plaintiff had brief crying spells throughout the interview, but was "cooperative, comprehended instructions adequately, and appeared to be putting forth a good level of effort."  [Id.].  The Plaintiff's verbalizations were spontaneous, coherent, and without evidence of disorientation or thought disorder, although her insight was poor.  [Id.].  Additionally, Dr. Nevils reported that the Plaintiff appeared "credible, although somewhat, limited informant."  [Tr. 404.].

Dr. Nevils administered two tests to the Plaintiff:  the Wechsler Adult Intelligence Scale-Forth Addition ("WAIS-IV") and the Wide Range Achievement Test-Revision 4 ("WRAT-4"). [Id.].  On the WAIS-IV, the Plaintiff scored a 63 on verbal compression, a 71 on perceptual reasoning, a 66 on working memory, and a 59 on processing speed.  [Id.].   In addition, the Plaintiff yielded a full scale IQ score of 59.  [Id.].  The Plaintiff's results on the WRAT-4 indicated that the Plaintiff read at the grade level of 3.4 and performed math computation at the grade level of 3.5.  [Id.].

Based upon his interview with the Plaintiff and the Plaintiff's test results, Dr. Nevils concluded that the Plaintiff performs in the mentally retarded range of intellect and that her low intellectual level would create marked difficulties in memory, concentration, interpersonal relationships, and adaptability in competitive job circumstances.  [Id.].  Moreover, her anxiety and histrionic personality would be disruptive in interpersonal relationships.  [Id.].  Dr. Nevils diagnosed the Plaintiff with anxiety disorder, not otherwise specified, dysthymia, mild mental retardation, and histrionic personality traits.  [Tr. 405].

### C.     Aileen H. McAlister, M.D.

On February 23, 2010, state agency medical consultant Aileen H. McAlister, M.D.,

8

completed a form entitled "Psychiatric Review Technique." [Tr. 415-28]. Therein, Dr. McAlister opined that the Plaintiff suffered from the following disorders: organic mental disorder, affective disorder, anxiety-related disorder, personality disorder, and substance addiction disorder. [Tr. 415]. Dr. McAlister also rated the degree of functional limitations imposed upon the Plaintiff by the above impairments. Specifically, Dr. McAlister opined that the Plaintiff had moderate limitations in the following three areas: restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. [Tr. 425]. The Plaintiff did not, however, demonstrate episodes of decompensation. [Id.].

Dr. McAlister also completed a form entitled "Mental Residual Functional Capacity" on the same day. [Tr. 429-31]. Therein, Dr. McAlister opined that during an 8-hour workday, the Plaintiff was capable of understanding, remembering, and concentrating to carry out simply one to three step tasks. [Tr. 431]. In addition, the Plaintiff was capable of interacting with coworkers and the general public on an infrequent basis, but change in the work place should be introduced slowly and supervision should be supportive and non-confrontational. [Id.]. On May 26, 2010, state agency psychologist Jeffrey T. Bryant, Ph.D., affirmed Dr. McAlister's assessment. [Tr. 452].


### D.     Alice K. Garland, M.S., L.S.P.E.

On May 24, 2011, Alice K. Garland, M.S., L.S.P.E., performed a psychological consultative examination on the Plaintiff. [Tr. 477-83]. Ms. Garland observed that the Plaintiff was histrionic and very tearful at times, but that she later calmed down. [Tr. 477]. Ms. Garland opined that that the Plaintiff was magnifying her symptoms. [Id.].

9

When the Plaintiff was asked about her personal and family history, she stated that she was raised by her grandmother who was good to her and denied any abuse. [Tr. 478]. The Plaintiff reported that she was "depressed some," although she was unsure why, and that she had felt this way ever since she was a teenager. [Id.]. When asked why she was unable to work, the Plaintiff responded that she has not been able to get a job and that she did not know where to find one. [Id.]. She also reported that she had previously been arrested for "DUIs and stuff." [Id.].

Assessing the Plaintiff's mental status, Ms. Garland noted that the Plaintiff's motor activity was very fidgety and restless, her eye contact was fair to poor, and her speech was very loud and pressured, spontaneous, and rambling. [Id.]. The Plaintiff's thought process was tangential and there was no indication of a thought disorder. [Tr. 479]. Ms. Garland explained that she was unable to estimate the Plaintiff's intelligence because the Plaintiff demonstrated symptom magnification. [Id.]. Ms. Garland also noted that it was difficult to identify the Plaintiff's current symptoms because she could not obtain specifics from the Plaintiff. [Id.].

The Plaintiff explained that her daily activities included preparing food for her children and performing occasional housework, such as cleaning the kitchen and doing laundry. [Id.]. She stated that her aunt usually goes to the store for her and that her aunt is often at the Plaintiff's house. [Id.]. Ms. Garland was hesitant to determine how the Plaintiff would relate on a daily basis because she believed that the Plaintiff was magnifying her symptoms. [Id.]. For the same reason, Ms. Garland was likewise hesitant to opine whether the Plaintiff could handle her finances. [Id.].

Ms. Garland administered three tests to the Plaintiff: the Structured Interview of Reported Symptoms ("SIRS"), the Test of Memory Malingering ("TOMM"), and the Personality Assessment inventory ("PAI"). [Tr. 480-82]. On the SIRS, the Plaintiff's score of 196 was

10

"significantly above the cutoff of greater than 76 indicating the client was magnifying symptoms of emotional problems." [Tr. 480]. On the TOMM, which determines whether symptom magnification of cognitive deficiencies may be present, the Plaintiff's score suggested less than optimal effort. [Tr. 481]. Finally, on the PAI, the Plaintiff's INF scaled score exceeded the cutoff for profile validity which suggests problems attending to or interpreting test content. [Tr. 482]. While several possible scenarios could explain the reason for the results, such as difficulty with reading, Ms. Garland opined that the Plaintiff had responded in a careless or random fashion. [Id.]. Ms. Garland also noted that the Plaintiff was given a WRAT-IV reading and math test, the results of which indicated that the Plaintiff's reading and math comprehension was the equivalent to the grade level of 2.4. [Id.].

Ms. Garland concluded that the Plaintiff's primary diagnosis was malingering. [Id.]. Therefore, Ms. Garland was unable to assess the Plaintiff's mental ability to do work-related activities. [Tr. 484-86].


V.      POSITIONS OF THE PARTIES

The Plaintiff argues, generally, that the ALJ's decision is not supported by substantial evidence. [Doc. 12 at 8]. The Plaintiff submits that there is no medical evidence from a physician which the ALJ could have properly relied on in determining that the Plaintiff did not suffer from a severe mental impairment. [Id.]. Because the Plaintiff's mental impairments were severe, the Plaintiff maintains that the ALJ erred in relying upon the Medical-Vocational Guidelines (the "Grid") in determining that a significant number of jobs existed in the national economy that the Plaintiff was capable of performing. [Id. at 8-9].

The Commissioner argues that the ALJ's decision is supported by substantial evidence.

[Doc. 18 at 7].  As a result, the Commissioner maintains that the ALJ's reliance on the Grid was appropriate given that the Plaintiff's mental impairments did no significantly limit her ability to perform light work.  [Id. at 8].

## VI.     ANALYSIS

 The Court will address the Plaintiff's allegations of error in turn.

### A.     Mental Impairments

The Plaintiff maintains that that ALJ ignored the medical evidence of record indicating that she suffered from a severe mental impairment.  [Doc. 12 at 9].  The Plaintiff cites to the treatment notes of Dr. Conway and the opinions of Drs. Nevils and McAlister as evidence that the Plaintiff's mental conditions were severe.  [Id.].  As such, the Plaintiff argues that the record contains no contradictory evidence for which the ALJ could have relied on to find otherwise.  [Id. at 10].

The Commissioner concedes that while some evidence may exist in the record to support the Plaintiff's allegation, the ALJ's finding that the Plaintiff did not suffer from a severe mental impairment must nonetheless be affirmed because it is supported by substantial evidence.  [Doc. 18 at 12].   The Commission points to Dr. Conway and Ms. Garland's opinions, as well as the Plaintiff's school records and her daily living activities, as substantial evidence supporting the ALJ's conclusion that the Plaintiff's mental conditions were not sever.  [Id. at 12, 14].

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation

12

omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, a reviewing court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

After addressing the medical evidence of record, the ALJ opined that the Plaintiff's "medically determinable mental impairments of nerves, depression and bipolar, considered singly and in combination, do not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and are therefore nonsevere." [Tr. 16]. The ALJ's based his decision on the following reasoning.

First, the ALJ addressed the credibility of the Plaintiff. The ALJ found that the Plaintiff's allegation of total disability was impaired by her reported daily activities. [Tr. 19]. The ALJ explained that at one point or another throughout the record, the Plaintiff reported that she performed housework, including laundry, shopping, and preparing simple meals, and cared for her young children at home without assistance. [Id.].

The ALJ also noted that that Plaintiff had made inconsistent statements concerning her allegation of disability. Specifically, the ALJ found that the Plaintiff had reported to Dr. Nevils that she had "a lot" of family problems, but reported to Ms. Garland that she was raised by her

13

grandmother who was good to her and denied abuse. [Id.]. The Plaintiff reported that she had

no criminal history, but the record indicates that she was arrested for driving under the influence

and for other "stuff." [Id.]. The Plaintiff also reported that she last worked in 1997, although

her certified earnings record reveals that she had self-employment earnings in 2006 and 2009, a

fact the ALJ believed demonstrated that the Plaintiff was not as intellectually challenged as

purported. [Tr. 19, 122].

The ALJ also noted that the Plaintiff reported she had attended special education classes

while in high school, but her school records do not substantiate her claim. [Tr. 19, 411-14]. In

the same vein, the Plaintiff's performance on the tests administered by Dr. Nevils and Ms.

Garland conflicted with the Plaintiff's high school proficiency scores in math and language. [Tr.

19]. During the Plaintiff's 9th grade year, the Plaintiff obtained a passing score of 89% in math,

and the following year while in 10th grade, obtained a passing score of 79% in language. [Tr.

414].

The ALJ further questioned the Plaintiff's credibility after she reported to Dr. Nevils in

November 2009, that she no longer could afford her prescriptions for Oxycontin, Xanax, and

Depakote because her TennCare coverage had stopped. [Tr. 19]. However, pharmacy records

reveal that TennCare continued paying for her prescriptions from November 2009 through

March 2011. [470-76].

Secondly, the ALJ addressed the medical evidence of record concerning the Plaintiff's

mental conditions. The ALJ assigned great weight to Dr. Conway's mental status examination

conducted in November 2009. [Tr. 20]. The ALJ noted that Dr. Conway had opined that the

Plaintiff's memory, concentration, and interaction with others was adequate, she had normal

thinking, her affect was normal with an anxious mood, and she demonstrated no signs of mental

14

retardation. [Id.]. The ALJ concluded that Dr. Conway's opinion to be consistent with other medical evidence of record as well as the Plaintiff's school records. [Id.].

The ALJ rejected Dr. Nevils' opinion, concluding that it was too restrictive and was largely based upon the Plaintiff's subjective complaints. [Id.]. The ALJ also noted inconsistencies within the opinion. Dr. Nevils reported that the Plaintiff comprehended instructions adequately but later noted that she had difficulty with memory and concentration. [Id.]. He also reported that the Plaintiff was credible but noted she was a limited informant. [Id.]. Additionally, the ALJ opined that the overall medical evidence combined with the Plaintiff's activities of daily living and her school records failed to support Dr. Nevils' opinion or the accuracy of the Plaintiff's IQ test results. [Id.].

The ALJ assigned no weight to Dr. McAlister's opinion, finding that she had based her opinion of Dr. Nevils' assessment. [Id.]. The ALJ likewise reasoned that other medical evidence of record, as well as the Plaintiff's daily living activities and school records, did not support Dr. McAlister's opinion. [Id.].

Finally, the ALJ briefly addressed Ms. Garland's opinion. [Id.]. Because the Plaintiff's primary diagnoses was malingering, the ALJ observed that Ms. Garland was unable to provide any limitations or opinions regarding the Plaintiff's functional abilities. [Id.].

Based upon the foregoing discussion, the Court finds that the ALJ articulated specific reasons, supported by substantial evidence, to support his conclusion that he Plaintiff's mental conditions were not severe. The ALJ's reliance on the opinion of the Plaintiff's treating physician Dr. Conway, the credibility of the Plaintiff, combined with Ms. Garland's opinion that the Plaintiff was malingering her symptoms, provided ample evidence to support the ALJ's decision.

The Plaintiff's argument relies in part on the assertion that the ALJ failed to properly consider the state agency opinions of Drs. Nevils and McAlister in accordance with Social Security Ruling 96-6p, 1996 WL 374180, at *1 (1996). The ruling provides, in pertinent part, that opinions rendered by state agency psychological consultants regarding the nature and severity of a claimant's impairments must be treated as expert opinion evidence of non-examining sources. Id. Although the ALJ is not bound by the findings of a state agency determination, the ALJ may not ignore the opinion and must provide an explanation for the weight assigned to the opinion. Id. at 2.

In the present matter, the Court finds that the ALJ properly addressed Drs. Nevils and McAlister's opinion in accordance with the Social Security Ruling 96-6p. As described above, the ALJ addressed inconsistencies within Dr. Nevils' opinion, finding that other medical evidence, particularly Dr. Conway's November 2009 opinion, conflicted with Dr. Nevils' assessment of the Plaintiff's mental limitations. In addition, the ALJ noted that the Plaintiff's reported daily living activities and school records also conflicted with Dr. Nevils' opinion. The ALJ explained similar reasoning for his rejection of Dr. McAlister's opinion and noted that her opinion was based upon Dr. Nevils' findings which the ALJ had assigned no weight to. Accordingly, the Court finds that ALJ provided adequate explanation for the weight assigned to the state agency opinions in accordance with Social Security Ruling 96-6p.

The Court is also unpersuaded by the Plaintiff's assertion that the record is void of any medical evidence from a physician contradicting the opinions of Drs. Nevils and McAlister. To the extent that the ALJ relied upon Ms. Garland's examination, the Plaintiff argues that such reliance was error because Ms. Garland was unable to assess the Plaintiff's residual functional capacity due to her diagnosis of malingering. However, as the Commissioner correctly points

out, the Plaintiff's malingering is precisely what the ALJ relied upon, in part, as support for concluding that the Plaintiff's mental conditions were not as limiting as she alleged or as opined by Drs. Nevils and McAlister.

Moreover, the Plaintiff ignores the ALJ's reliance upon Dr. Conway's November 2009 opinion which is directly at odds with Drs. Nevils and McAlister's opinions. Although Dr. Conway is not a psychologist, he was the only physician of record who treated the Plaintiff for anxiety and depression, and did so for over 10 years. During his continuous treatment of the Plaintiff, Dr. Conway's treatment notes are void of any documentation that confirms the severity of the Plaintiff's allegations or the degree of symptoms she alleges. Therefore, Dr. Conway's November 2009 opinion that the Plaintiff had no marked mental limitations and did not demonstrate signs of mental retardation provided substantial evidence upon which the ALJ was entitled to rely on. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) (a treating physician's opinion as to the nature and severity of an impairment is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques"). Moreover, "the opinions of treating physicians should be given greater weight than those held by physicians the Secretary hired and who only examined plaintiff once." Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1054 (6th Cir. 1983). Thus, the Court agrees with the Commissioner's assertion that the ALJ's decision to assign great weight to Dr. Conway's opinion, rather than the state agency opinions, was a reasonable exercise of the ALJ's authority to resolve conflicts. See 20 C.F.R. 404.1520b(b).

The Court also finds that the non-medical evidence addressed by the ALJ supported his conclusion that the Plaintiff's mental impairments were not severe. The ALJ found that the Plaintiff's performance on the tests administered by Dr. Nevils and Ms. Garland was unreliable

17

given the Plaintiff's proficiency scores in high school. Moreover, the Plaintiff's reported daily living activities, her inconsistent statements made to Dr. Nevils and Ms. Garland, as well as the Plaintiff's reported income in 2006 and 2009, demonstrates that the ALJ properly considered the factors set forth in 20 C.F.R. § 416.929(c)(3) for determining the Plaintiff's credibility and reasonably found that the Plaintiff was not credible. The ALJ's credibility finding should not be taken lightly, but should be afforded deference given that the ALJ had to opportunity to observe the Plaintiff's demeanor. <u>Kirk v. Sec'y of Health & Human Servs.</u>, 667 F.2d 524, 538 (6th Cir. 1981) (citing omitted); <u>see also</u> <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."). Candidly, this is one of those cases where the Court finds that there is substantial evidence in the record to support both the ALJ's determination and arguably a different conclusion. However, because there is substantial evidence to support the ALJ's findings and determination and because he applied the proper legal standards of procedure, the Court will affirm the ALJ.

Accordingly, the Court finds that the ALJ's credibility finding provided substantial evidence supporting his decision, and the Plaintiff's allegation of error in this regard is not well-taken.

### B. Medical-Vocational Guidelines

The Plaintiff also argues that the ALJ erred in using the Grid to determine that a substantial number of jobs existed in the national economy that the Plaintiff was capable of performing.

As previously discussed, if the ALJ determines that the claimant cannot perform past

18

relevant work, the ALJ must proceed to step five of the sequential evaluation and determine whether jobs exist in the national economy that accommodate the claimant's residual functional capacity and vocational factors. 20 C.F.R. § 404.1520; 20 C.F.R. § 404.1560(c)(1). If the claimant's limitations and impairments are only exertional and the claimant's specific vocational profile is listed in a rule contained in the Grid, the ALJ may prove the existence of a significant number of jobs by relying on the Grid. 20 C.F.R. § 404.1569a(b); 20 C.F.R. § 404, Subpt. P., App. 2 § 200.00(b). The Grid essentially allows the ALJ to take administrative notice that jobs are available in the national economy in which the claimant is capable of performing without having to consult the testimony of a vocational expert. See Kirk, 667 F.2d at 529.

However, when evidence exist that a claimant has mental impairments precluding the claimant from performing work at a given level, "the ALJ must treat the Grids as only a framework for decision-making, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform." Jordan v. Comm'r of Soc. Sec., 548 F.3d 417, 424 (6th Cir. 2008).

In the present matter, after taking into consideration the Plaintiff's physical limitations and a finding that the Plaintiff did not have a severe mental impairment, the ALJ opined that the Plaintiff was capable of performing a full range of light work. [Tr. 17]. The ALJ explained his reliance on the Grid as follows:

> If the claimant has solely nonexertional limitations, section 204.00 of the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15). Based on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disable" is directed by Medical-Vocational Rule 202.17.

[Tr. 21]. Thus, the ALJ used Grid Rule 202.17 to find that a significant number of jobs existed

which the Plaintiff is capable of performing.

Because the Court has found that substantial evidence supports the ALJ's finding that the Plaintiff does not suffer from a severe mental impairment, the Court finds that the ALJ's reliance on the Grid was appropriate. The fact that the ALJ did not dispute that the Plaintiff suffered from anxiety, depression, and bipolar disorder, but rather disagreed with the severity of the conditions [Tr. 19], does not change the analysis. See Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990) (holding that the mere presence of a mental impairment does not preclude the use of the Grid). "A mental impairment must produce work-related limitations that significantly affect the claimant's ability to perform a full range of work at a given exertional level before a mental impairment precludes the use of the medical-vocational guidelines." Id. (citing Buress v. Sec'y of Health & Human Servs., 835 F.2d 139, 142 (6th Cir. 1987)). Accordingly, because substantial evidence supports the ALJ's finding that the Plaintiff did not have a severe mental impairment, the ALJ's reliance on the Grid to prove that a substantial number of jobs existed in the national economy was appropriate.

Therefore, the Plaintiff's argument in this regard is not well-taken.

## VII.    CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[3] that Plaintiff's Motion for Judgment on the Pleadings [**Doc. 11**] be **DENIED** and that the Commissioner's Motion for Summary Judgment [**Doc. 17**] be **GRANTED**.

Respectfully submitted,

_____ s/ C. Clifford Shirley, Jr. _____
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).